IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:20-CV-53-FL

| | | |
|---|---|---|
| BLAKE GARY ADAMS; WILLIAM GARY ADAMS; KEITH SMITH; D&T FARMS, INC.; and WARREN FARMING PARTNERSHIP, | ) ) ) ) ) | |
| Appellants,[1] | ) ) | |
| v. | ) ) ) | ORDER |
| SOUTHERN PRODUCE DISTRIBUTORS, INC., | ) ) ) | |
| Appellee. | ) ) ) | |

This consolidated case is before the court on appellants' appeals from an interlocutory order of the bankruptcy court entered March 11, 2020. See In re S. Produce Distributors, Inc., 616 B.R. 667 (Bankr. E.D.N.C. 2020) (hereinafter the "bankruptcy court's order"). Appellee responded in opposition, and appellants have replied. In this posture, the issues raised are ripe for ruling. For the following reasons, the bankruptcy court's order is affirmed.

### STATEMENT OF THE CASE

The instant appeals arise out of five adversary proceedings commenced within a bankruptcy case, No. 18-002010-5-SWH (E.D.N.C.) (the "bankruptcy case"), in which appellee is the debtor and appellants are unsecured creditors. Appellee's business operations included purchasing sweet potatoes from growers and packaging and selling them to wholesale and retail

---

[1] The court constructively amends the caption of this order to reflect a stipulation of dismissal with respect to appellant Strickland Farming Partnership ("Strickland"), on February 23, 2021. (DE 25). As a result, the appeal of Strickland is dismissed as moot.

vendors. Appellants' business operations include growing sweet potatoes. To provide context to the bankruptcy court's order and the issues raised on appeal, the court first summarizes below the procedural history of the bankruptcy case, followed by a summary of the adversary proceedings and the instant appeal.

A.    Bankruptcy Case

Appellee filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 20, 2018 (the "petition"). Two of the five appellants filed proofs of claims in the bankruptcy case: Warren Farming Partnership ("Warren") in the amount of $437,404.84; and D&T Farms, Inc., ("D&T") in the amount of $602,528.13.[2] The other three appellants did not file proofs of claims, but they are listed in the petition as having unsecured claims in the following amounts: Blake Gary Adams ("B. Adams") in the amount of $33,226.48; William Gary Adams ("W. Adams") in the amount of $78,656.40; and Keith Smith ("Smith") in the amount of $256,707.40.

Four months after the petition date, appellee filed an emergency motion for authority to make interim payments on critical pre-petition grower claims. (Record (DE 26-1) 246) (the "emergency motion"). The emergency motion explained that appellee could not "continue as an ongoing business operation unless it is able to secure sweet potatoes" from its growers, and most of the growers with available sweet potatoes for sale were the same growers who previously supplied sweet potatoes and held pre-petition claims. (Id. at 247). Further, appellee represented, "most of the [g]rowers will refuse to sell any of their sweet potatoes to [appellee] unless their respective pre-petition claim is paid in full." (Id.). Accordingly, appellee sought authorization "to make interim payments on the pre-petition grower claims" identified in the motion, where all of

---

[2]    Former appellant Strickland filed a proof of claim in the amount of $168,000.00.

2

the appellants were included amongst those identified. (Id. at 248, 250). At hearing on the motion, upon objections raised, appellee amended the relief sought to obtain authorization to make "pre-payments for . . . new purchase contracts" where the amount of each pre-payment "would be based upon a mathematical formula of up to 80% of [each] [g]rower's unpaid, pre-petition claim" against appellee. (Id. at 254). But such pre-payment was not to be "a payment of any pre-petition amount owed to any [g]rower." (Id.).

On September 7, 2018, the bankruptcy court entered an order granting the emergency motion, as amended, authorizing appellee to enter into post-petition contracts with growers, including appellants, in which appellee could make "partial pre-payments" for the purchase of new sweet potatoes. (Id. at 256) (hereinafter the "pre-payment order"). The pre-payment order incorporated by reference the requested formula for calculating the amount of pre-payments, and allowed appellee to make such pre-payments out of its "Auxiliary Account or . . . Cash Collateral Account." (Id.). The pre-payment order also noted that appellee then forecasted a "proposed treatment of a class of Grower claims in a proposed Plan of Reorganization," whereby growers would have the option to "recharacterize and convert the full amount of prepayment it has received . . . into a credit and payment in the same dollar amount of pre-petition [g]rower debt." (Id. at 255).

Thereafter, appellee filed a plan of reorganization and amended plans, culminating in a fifth amended plan of reorganization on January 29, 2019. The bankruptcy court confirmed the fifth amended plan of reorganization, on February 14, 2019, as modified at confirmation hearing, and incorporated into the confirmation order (hereinafter, the "confirmed plan" and "confirmation order"). The confirmed plan did not provide for ongoing operations of appellee, but rather provided for the sale of "all operating assets" of appellee, "sale and disposition of . . . remaining

Retained Assets," "payment in full of all secured claims," and "treatment and payment of all allowed unsecured claims to the extent of available Disposition Proceeds." (Id. at 269).

The confirmed plan defines the "Reogranized Debtor" as appellee, "as reorganized under the terms of this [confirmed plan] and revested with the property which was formerly property of the estate." (Id. at 268). It also includes a section entitled "Retention of Jurisdiction," providing in part that -

> The Bankruptcy Court shall, after Confirmation, retain jurisdiction of this case . . . to determine any issues . . . in adversary proceedings commenced post-confirmation, including, but not limited to . . . any claims by the Debtor or Reorganized Debtor against any Growers arising from post-petition contract breaches relating to the sale and purchase of produce, recovery of post-petition prepayments made to Growers, damages of any sort arising from any such contract breaches or Grower conduct relating to the same, [and] any claims by Debtor or Reorganized Debtor arising from or pursuant to the provisions of [the pre-payment order].

(Id. at 260).

After consummation of asset sales contemplated in the confirmed plan, on May 1, 2019, appellee commenced the five adversary proceedings out of which this appeal arises, one against each appellant, which the court will describe in further detail in the next section of this order. (See Bankr. E.D.N.C. Nos. 19-64-5 (B. Adams); 19-65-5 (D&T); 19-66-5 (W. Adams); 19-67-5 (Smith); 19-69-5 (Warren)).³ Thereafter, on October 16, 2019, appellee filed in the bankruptcy case objections to claims of Warren and D&T, as well as objections to scheduled claims of B. Adams, W. Adams, and Smith. (See Bankruptcy Case Docs. 658, 659, 661-663).⁴ In appellee's latest post-confirmation report, filed January 26, 2022, appellee notes the pendency of the

---

³ Appellee also commenced adversary proceeding, case No. 19-68-5 against Strickland, which as noted previously was subject of a stipulation of dismissal.

⁴ For bankruptcy case documents not included in the record on appeal filed in this case, the court cites to the docket entry numbers in the bankruptcy case, designated in citations in this order as "Bankruptcy Case Docs."

4

adversary proceedings, unresolved objections, impasse reached at mediation, and certain real estate sales contemplated by the terms of the confirmed plan to take place in 2022. (Id. Doc. 950).

B.  Adversary Proceedings

In its original complaints, appellee asserted that appellants breached post-petition contracts with appellee by failing to deliver some or all of an agreed-upon amount of sweet potatoes, or requiring additional payments to obtain an agreed-upon amount of sweet potatoes. Instead, appellee alleges, appellants applied payments received from appellee to appellee's pre-petition debts, in violation of the pre-payment order. Appellee contends this conduct by appellants impaired its "efforts to continue as an operating entity" and forced it to abandon reorganization and instead enter into the confirmed plan providing sale of its assets. (E.g., DE 26-15 at 12 (Warren Compl. ¶ 31)). Appellee asserted claims for breach of contract, unjust enrichment, and violation of the automatic stay, and it sought compensatory and punitive damages, declaratory relief, and contempt sanctions for violation of the pre-payment order.

Appellants filed answers in each of their cases demanding a jury trial. In addition, four appellants (B. Adams, W. Adams, Smith, and Warren) asserted counterclaims in their answers, alleging that appellee breached post-petition contracts by refusing to pay for or accept delivery of sweet potatoes as specified in the contracts.

On October 1, 2019, the bankruptcy court held a hearing concerning the jury trial demands and, after hearing argument from the parties, allowed appellee to amend its complaints. In its operative amended complaints in the adversary proceedings, appellee removed the claims for breach of contract and unjust enrichment, and replaced them with claims for violation of the pre-payment order and a claim for turnover of the property of the bankruptcy estate. As relief, appellee seeks an order directing appellants "to return to the [appellee] the funds used by [appellee]

to pay" the pre-payment amount under its post-petition contracts with appellants, again with declaratory relief, and contempt sanctions for violation of the pre-payment order. (E.g., DE 26-15 at 80 (Warren Am. Compl.).

Appellants answered the amended complaints, again demanding a jury trial on all issues so triable. In addition, four appellants (B. Adams, W. Adams, Smith, and Warren) again asserted counterclaims in their answers, alleging that appellee breached post-petition contracts by refusing to pay for or accept delivery of sweet potatoes as specified in the contracts.

In its order entered March 11, 2020, which is subject of the instant appeal, the bankruptcy court struck appellants' demands for jury trial. See In re S. Produce Distributors, Inc., 616 B.R. at 675. The court reasoned that appellants who had filed claims (D&T, and Warren) lost their right to demand a jury trial by virtue of filing such claims. Id. at 673. In addition, the court reasoned that four appellants who had filed counterclaims (B. Adams, W. Adams, Smith, and Warren) thereby waived their right to a jury trial. Id. at 673-674. In the same order, the bankruptcy court also held in abeyance appellee's objections to appellants' claims filed in the bankruptcy case, pending outcome of the adversary proceedings. Id. at 671-672.

C.      Appeals

The instant appeal followed, commenced on March 26, 2020 by appellants' filing of motions for leave to appeal from interlocutory order of the bankruptcy court. On February 4, 2021, this court granted the motions for leave and consolidated the appeals. (Order (DE 17)).[5] Appellants filed their opening brief on May 24, 2021. Thereafter, upon appellants' notice of filing of a motion to amend complaint in the adversary proceedings, the court stayed the appeals pending further order of the court. Upon status report filed on October 28, 2021, notifying the court of denial by

---

[5] This matter was reassigned to the undersigned on January 20, 2021, upon retirement of the district judge previously assigned.

the bankruptcy court of appellee's motion to amend complaint,[6] the court lifted the stay on the appeal, and appellee filed its brief, followed by appellants' consolidated reply.

## COURT'S DISCUSSION

Appellants argue that the bankruptcy court erred in concluding that those who filed proofs of claims in the bankruptcy case waived jury trial rights as to all claims in their respective adversary proceedings. Appellants also argue that the bankruptcy court erred in concluding that those who filed counterclaims in the adversary proceedings waived jury trial rights as to all claims in their respective cases. Upon de novo review, the court disagrees as to both issues presented, for the reasons set forth in turn below.[7]

A.   Proof of Claim Appellants

The Seventh Amendment guarantees that "[i]n suits at common law . . . the right of trial by jury shall be preserved." U.S. Const. amend. VII. In the context of proceedings in bankruptcy, the United States Supreme Court has stated that "[u]nless a legal cause of action involves 'public rights,' Congress may not deprive parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 53 (1989). "Legal claims are not magically converted into equitable issues by their presentation to a court of equity." Id. at

---

[6]   As noted by the parties in their status report, the bankruptcy court determined that motions to amend were unnecessary because appellee's complaints already plausibly recited facts necessary to support newly-asserted causes of action under 11 U.S.C. §§ 549 and 550. The parties also noted in their status report the pendency of a motion by appellee in the adversary proceeding involving D&T to proceed with bench trial on appellee's claims against D&T. However, after the filing of the status report, the bankruptcy court denied that motion. (See Bankr. E.D.N.C. Nos. 19-19-65-5 (D&T)). No other matters are pending for decision in the adversary proceedings, while the parties await the outcome of the instant appeal. The adversary proceedings have since been transferred to a different bankruptcy judge, upon retirement of the judge originally assigned.

[7]   A third issue presented, whether the bankruptcy court erred in concluding that no appellant was entitled to jury trial on any claim pending in the adversary proceedings, is subsumed within the issues noted in the text above. The court reviews the bankruptcy court's "legal rulings de novo." In re Cir. City Stores, Inc., 996 F.3d 156, 164 (4th Cir. 2021). "Because the relevant facts underlying these appeals are undisputed, the applicable standard of review is de novo." Id.

7

52.[8] Rather, to involve a public right in the bankruptcy context, an action must "arise as part of the process of allowance and disallowance of claims" or otherwise be "integral to the restructuring of debtor-creditor relations." Id. at 58.

As pertinent here, "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." Langenkamp v. Culp, 498 U.S. 42, 44 (1990) (quoting Granfinanciera, 492 U.S. at 58). As such, in Langenkamp, the Supreme Court held that where creditors had "filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court," they were "not entitled to a jury trial on [a] trustee's preference action." Id.

Here, appellant Warren filed a proof of claim on June 12, 2018 (DE 26-16), and appellant D&T filed a proof of claim June 20, 2018 (DE 26-6). By filing such claims against the bankruptcy estate, appellants D&T and Warren subjected themselves to the bankruptcy court's equitable power, such that they are not entitled to a jury trial on appellee's claims in the adversary proceedings. Accordingly, the bankruptcy court correctly concluded that those appellants who filed proofs of claims in the bankruptcy case lost jury trial rights as to all claims in the underlying adversary proceedings.

Appellants nonetheless argue that filing proofs of claim was not sufficient to waive jury trial rights because appellee's claims in the adversary proceedings are not related to the pre-petition obligations set forth in the proofs of claim. Appellants cite to Germain v. Connecticut Nat. Bank, 988 F.2d 1323 (2d Cir. 1993), for the proposition that "neither precedent nor logic supports the

---

[8] Unless otherwise specified, all citations in this order omit internal quotations and citations.

proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed." Id. at 1330. "For a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims," or be "inextricably intertwined with a public right." Id. at 1330-1331.

Although the United States Court of Appeals for the Fourth Circuit has not addressed the issue, the Second Circuit has recognized that "a creditor loses its jury trial right only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor relationship." In re CBI Holding Co., Inc., 529 F.3d 432, 466 (2d Cir. 2008). The Third Circuit likewise has held that, to determine the impact of a proof of claim upon the creditor's right to a jury trial, "[a] court must . . . ask whether the resolution of the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims." Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242, 1252 n.14 (3d Cir. 1994); cf. Stern v. Marshall, 564 U.S. 462, 499 (2011) (looking to whether the "action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process").

The foregoing cases and principles do not compel a different result here. Appellee's claims in the adversary proceedings necessarily are part of the process of the disallowance and allowance of claims, and they are otherwise integral to restructuring the debtor-creditor relationship. For example, in its operative complaint against D&T, appellee seeks return of a "pre-payment" made to D&T, post-petition and pre-confirmation. (Am. Compl. ¶ 21 (DE 26-5 at 61)). Appellee alleges that the pre-payment was made based on the bankruptcy court's order authorizing it to make such pre-payment, calculated "based on a mathematical formula of up to 80% of a particular Grower's unpaid pre-petition Grower debt." (Id. ¶ 17(1)). While appellant D&T disputes the

9

characterization of the payment, and what was provided in return, it is undisputed that this payment was made by appellee to D&T.  (Answer ¶¶ 17-21 (DE 26-5 at 75)).  The same dispute exists between appellee and Warren.  (See DE 26-15 at 73-74, 88).

Because the alleged pre-payment was made post-petition, and pre-confirmation, the parties' dispute over whether it should be returned, or how it should be credited as between appellee and appellants, necessarily is part of the process of allowance disallowance of claims.  In addition, the dispute is otherwise integral to restructuring the debtor-creditor relationship because the bankruptcy court expressly authorized the post-petition payments to pre-petition growers, such as appellants D&T and Warren. (See pre-payment order ¶3 (DE 26-1 at 255)). Moreover, the bankruptcy court expressly reserved jurisdiction over disputes arising from those payments in the confirmed plan. (See confirmation order, Article 11 (DE 26-1 at 260).  Finally, the bankruptcy court tied resolution of those disputes to the claims allowance process, by holding in abeyance appellee's objections to claims pending resolution of the adversary proceedings, which objections are based on the same allegations asserted in their adversary proceeding amended complaint. See 616 B.R. at 672; (see, e.g., Bankruptcy Case Doc. 658 at 3 (alleging in objection that Warren "applied the Pre-Payment Amount to its asserted Pre-Petition Claim held against" appellee)).  In sum, the disputes between appellee and appellants in the adversary proceedings are inextricably intertwined with a public right.

Cases cited by appellants finding no waiver of jury trial rights upon proofs of claim filed are instructively distinguishable.  For example, in Germain, the court found no waiver in an action by a bankruptcy trustee that is "aimed at enhancing the bankruptcy estate and does not involve any other creditor's rights or the relationship among the creditors as a group or between the debtor and another creditor." 988 F.2d at 1331.  There, the trustee's suit alleged that a creditor bank had "used

10

its power as the debtor's primary lender to exercise control of the debtor to its detriment." Id. at 1326.  The instant case stands in contrast, where appellee seeks repayment from a group of creditors that had both received post-petition payments, under express authorization of the bankruptcy court, and had existing pre-petition claims.

Likewise distinguishable, in the case In re Freeway Foods of Greensboro, Inc., 449 B.R. 860, 885 (Bankr. M.D.N.C. 2011), a creditor who was a landlord real property of a restaurant franchise operated by debtor filed a proof of claim in the debtor's bankruptcy for "rent and taxes owned."  449 B.R. at 884.  The landlord brought suit for breach of lease, as well as tort claims such as fraud, unfair trade practices, interference with contract, and conspiracy.  The bankruptcy court determined that the creditor waived jury trial rights on the breach of lease claim but not on the tort claims.  Id. at 884-887.  Notably, the court reasoned that the breach of lease claim "has nothing to do with" the creditor's tort claims.  Id. at 884.

Similarly, in In re Oakwood Homes Corp., 378 B.R. 59 (Bankr. D. Del. 2007), the bankruptcy court determined that two sets of causes of action were not both subject to jury trial. A first set arose out of a creditor's "role as the underwriter and then a secured lender to" the debtor, and the second set arose out of "services performed pursuant to [an] Engagement Letter," upon which proofs of claims are based.  378 B.R. at 64, 69.  Accordingly, the court held that the success or failure of the first set of claims "would not affect the allowance of disallowance" of the creditor's claims. Id. at 69.  If successful, they would only serve to "augment the estate."  Id. at 70.

Here, by contrast, it cannot be said that the claims in the adversary proceedings have "nothing to do with" the proofs of claim filed by appellants D&T and Warren. Freeway Foods, 449 B.R. at 884.  Nor can it be said that the outcome of the adversary proceedings will "not affect

the allowance or disallowance of [appellants'] claims." Oakwood, 378 B.R. at 69. Rather they are intertwined with the claims allowance process by virtue of the bankruptcy court's pre-payment order, the bankruptcy court's reservation of jurisdiction over disputes involving those pre-payments, and its reasons for holding in abeyance adjudication of objections to claims pending outcome of the adversary proceedings.

Appellants argue that they did not waive jury trial rights because their proofs of claim relate to "different contracts, different payments, and different potatoes," than the pending adversary proceeding claims. (Reply (DE 40) at 16). In so arguing, however, appellants omit the most salient features of the instant bankruptcy case that intertwine the claims and distinguish this case from others finding no waiver of jury trial rights. In particular, unlike in the cases cited by appellants, the debtor expressly sought permission from the bankruptcy court to make payments from the bankruptcy estate to the same growers from whom it had purchased potatoes in prior years. Although they were necessarily different contracts, different payments, and different potatoes than before, the new contracts were linked by a formula to pre-petition claim amounts, and the pre-payments were restricted from application to pre-petition claims. In addition, the pre-payment order was sought because those same pre-petition claimants were "reluctant or unwilling" to provide new sweet potatoes to debtor without receiving "some type of cash payment." (Pre-payment Order § 3 (DE 26-1 at 25)). Further, "[t]he Unsecured Creditors Committee," of which appellant Smith was chairman, and D&T, Warren, and W. Adams, were members, "consented to the relief requested." (Id. § 6 (DE 26-1 at 256); see, e.g., Appointment of Committee of Unsecured Creditors (Bankruptcy Case Doc. 101)). Through the involvement of the bankruptcy court in threading the line between the pre-petition claims and the pre-payments allowed, disputes arising

from those pre-payments necessarily relate to the process of allowing and disallowing claims and are otherwise integral to restructuring the debtor-creditor relationship.

Appellants argue that their pre-petition claims are separated from the claims in the adversary proceedings by virtue of the intervening confirmation order, and its provision defining the "Reorganized Debtor" as "revested with the property which was formerly property of the estate, as provided by 11 U.S.C. Section 1141." (Confirmation Order § 1.29 (DE 26-1 at 268)). As such, appellants suggest, the adversary proceedings do not impact the bankruptcy estate because the estate was revested by that time in the debtor under § 1141.

This argument misses the mark because it fails take into account significant provisions of § 1141 and the confirmation order. Section 1141 provides, in pertinent part: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b) (emphasis added). Here, the confirmation order provides just such exceptional terms retaining the jurisdiction of the bankruptcy court over that portion of the bankruptcy estate that is impacted by the outstanding pre-petition claims and the adversary proceedings. In particular, it retains jurisdiction to determine any issues in the adversary proceedings, "any claims by Debtor or Reorganized Debtor arising from or pursuant to the provisions of [the pre-payment order]," and "any dispute as to the classification or allowance of claims," as well as "to resolve all the matters as may be set forth in the [confirmation order]." (Confirmation Order, Article 11 (DE 26-1 at 260)). It also expressly recognizes the continuing existence of the bankruptcy estate, for example, where it states "the Debtor will consult with the Unsecured Creditors Committee regarding the appropriate actions and timing to be taken by the Debtor on such Retained Assets in order to maximize the benefit to the bankruptcy estate." (Id. § 7.2 (DE 26-1 at 284) (emphasis added).

In this respect, far from separating the adversary proceedings from the process of allowing and disallowing claims, the confirmation order by its terms confirms that those issues are intertwined with administration of the bankruptcy estate. It reiterates the importance of the terms of the pre-payment order, and the relationship between the post-petition contracts and the pre-petition claims made by appellants. The confirmation order thus compels the result reached here, necessitating resolution of the adversary proceedings in the bankruptcy court and striking of the jury trial demands in the answers of appellants D&T and Warren.

B.     Counterclaim Appellants

The analysis of jury trial rights for appellants who have filed counterclaims in the adversary proceedings rests on similar principles as the analysis of those who filed proofs of claim. The key determinant to whether a jury trial right is preserved is whether an action "arise[s] as part of the process of allowance and disallowance of claims" or otherwise is "integral to the restructuring of debtor-creditor relations." Granfinanciera, 492 U.S. at 53. "[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." Langenkamp, 498 U.S. at 44 (quoting Granfinanciera, 492 U.S. at 58).

Although the United States Court of Appeals for the Fourth Circuit has not addressed the issue, this court previously has held in reliance upon Granfinanciera that an adversary proceeding defendant's "[f]iling [of a] counterclaim qualifie[s] as filing a claim which triggere[s] the non-jury, public rights process of the allowance and disallowance of claims in bankruptcy." In re Hudson, 170 B.R. 868, 874 (E.D.N.C. 1994). The critical element to "the loss of a jury trial lies not in some choice purportedly made by the claimant, but on the bankruptcy court's possession of the estate and its equitable power to allow or disallow claims made against the estate." Id.

14

Here, where appellants B. Adams, W. Adams, Smith, and Warren, filed counterclaims in the adversary proceedings, and where the disputes in the adversary proceedings fall within the scope of retained jurisdiction in the bankruptcy court's confirmation order, the counterclaims operate as claims against the estate, invoking the bankruptcy court's process of allowing and disallowing claims and restructuring the debtor-creditor relationship. Therefore, appellants who have filed counterclaims have lost their right to a jury trial for the resolution of such claims.

Appellants' arguments to the contrary are unavailing. Appellants argue, for instance, that a waiver of constitutional rights must be knowing and voluntary, and that filing a compulsory counterclaim does not meet this description. As noted by this court in granting leave for interlocutory appeal, there is a split in authority as to whether filing a compulsory, as opposed to permissive, counterclaim in a bankruptcy proceeding triggers a loss of jury trial rights. (See Order (DE 17) at 7). The Third Circuit has held in the bankruptcy context that a "defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim." Beard v. Braunstein, 914 F.2d 434, 442 (3d Cir. 1990).

However, the Seventh Circuit has described the status of the Beard opinion as follows:

> The Third Circuit, in a pre-Langenkamp decision, held that the defendant in an adversary proceeding does not waive its right to a trial by jury by filing a compulsory counterclaim. Beard v. Braunstein, 914 F.2d 434, 442 (3d Cir.1990). A number of lower courts have since disagreed, however, explaining that a waiver analysis is inappropriate under the Supreme Court's Langenkamp and Granfinanciera decisions.

Matter of Peachtree Lane Assocs., Ltd., 150 F.3d 788, 799 n.6 (7th Cir. 1998).

The intervening holding in Langenkamp is important for two reasons. First, filing a compulsory counterclaim is no less a knowing and voluntary act, with respect to its impact on jury trial rights, than filing a proof of claim, which the Supreme Court held in Langenkamp triggered a loss of jury trial rights. 498 U.S. at 44. Second, loss of a jury trial right, under the reasoning of

15

Langenkamp, is not based upon a "waiver" of that right, but rather upon operation of "the claims-allowance process which is triable only in equity." Id. The creditor's claim "become[s] integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction," and "[a]s such, there is no Seventh Amendment right to a jury trial." Id. at 44-45.

Moreover, the Fifth Circuit, albeit in an unpublished decision, has since affirmed a district court's determination that filing a compulsory counterclaim in an adversary proceeding triggers the loss of a jury trial right. See In re Davis, 538 F. App'x 440, 442 (5th Cir. 2013) (affirming bankruptcy court's and district court's determination to strike jury trial demand); In re Davis, No. 07-33986-H3-7, 2012 WL 2871662, at *6 (S.D. Tex. July 10, 2012) (noting "the mandatory or permissive nature of the counterclaim is irrelevant because the counterclaim seeks damages from the estate, which is subject to the bankruptcy court's equitable powers"). In sum, particularly in light of Langenkamp, the bankruptcy court applied the correct standard in addressing the impact of appellants' counterclaims on their jury trial rights.

Appellants argue that Hudson is distinguishable because it involved permissive counterclaims based upon pre-petition transactions, and this case involves compulsory counterclaims based upon post-petition transactions. The key to the analysis in Hudson, however, is not the timing of the claims, or their permissive/compulsory nature, but rather "the bankruptcy court's possession of the estate and its equitable power to allow or disallow claims made against the estate." 170 B.R. at 874. Here, the transactions upon which the claims and the counterclaims in the adversary proceedings are based were made by the debtor pre-confirmation, while it was a "Debtor-in-Possession" of the bankruptcy estate, overseen and administered by the bankruptcy court. (Pre-payment Order (DE 26-1 at 253)).

Appellants reiterate in this context their argument that, under the terms of the confirmation order, appellee has been "revested with the property which was formerly property of the estate," and "all property of the estate is re-vested in a Reorganized Debtor." (Reply (DE 40) at 15). They suggest, in this manner, that the counterclaims post-confirmation cannot be considered claims made against the estate. As noted previously, however, a confirmation order vests all property of the estate in the debtor, "[e]xcept as otherwise provided in the plan or the order confirming the plan." 11 U.S.C. § 1141(b). Here, the confirmation order expressly reserves jurisdiction to determine "any issues . . . in adversary proceedings commenced post-confirmation," including claims for "recovery of post-petition prepayments made to Growers" and claims "arising from or pursuant to the provisions of" the pre-payment order. (Confirmation Order (DE 26-1 at 260)). As such, the counterclaims seek "a piece of the disputed res, the debtors' estate," which is drawn into the confirmed plan. Hudson, 170 B.R. at 875; see Goodman v. Phillip R. Curtis Enterprises, Inc., 809 F.2d 228, 232 (4th Cir. 1987) ("[A]ssets which are not drawn into the Plan vest in the debtor upon confirmation.") (emphasis added); see, e.g., Cunningham v. Healthco, Inc., 824 F.2d 1448, 1460 (5th Cir. 1987) ("Having been expressly addressed in the plan, any recoveries under the causes of action remain under the supervision of the bankruptcy court.").

In sum, in the same manner as the claims in the adversary proceedings, the counterclaims necessarily relate to the process of allowing and disallowing claims and are otherwise integral to restructuring the debtor-creditor relationship. The transactions at issue in the counterclaims only took place by virtue of the bankruptcy court's pre-payment order, based upon the need for a mechanism in bankruptcy administration to make cash payments to growers who had pre-petition claims against debtor. Where the bankruptcy court reserved in the confirmation order jurisdiction over disputes involving those pre-payments, it drew into the plan those disputes and the bankruptcy

court's jurisdiction to adjudicate them in the process of restructuring the debtor-creditor relationships.[9]

Therefore, the bankruptcy court correctly struck appellants' jury trial demands for those appellants who filed counterclaims in the adversary proceedings.

## CONCLUSION

Based on the foregoing, the bankruptcy court's order striking appellants' jury trial demands is AFFIRMED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 28th day of March, 2022.

                                                                                         _____
LOUISE W. FLANAGAN
United States District Judge

---

[9] Because the court affirms the bankruptcy court's order striking jury trial demands on the basis of filing of counterclaims and proofs of claim, the court does not reach the parties' arguments concerning whether the asserted equitable nature of appellee's claims in the adversary proceedings requires striking the jury trial demands, or that appellants' assertion of a defense of offset compels the same result.